IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-02539-CNS-KAS

DAVID E. HILL,

      Plaintiff,

v.

A. CIOLLI, Warden,
ANDRE MATEVOUSIAN, Regional Director, and
TIMOTHY BARNETT, Acting Administrator,

      Defendants.

---

## ORDER

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 48. For the reasons explained below, the motion is DENIED.

### I.   SUMMARY FOR PRO SE PLAINTIFF

On May 13, 2024, you filed a motion for a temporary restraining order (TRO) and preliminary injunction, seeking an order enjoining Defendants "from encumbering more than 50% of the deposits" in your inmate trust fund account, on the ground that the encumbrances were imposed to retaliate against you for filing grievances and lawsuits, in violation of your First Amendment rights. ECF No. 48 at 1–2. Defendants filed their opposition to your TRO on May 21, 2024. ECF No. 54. They argue, among other things, that you cannot succeed on the merits of your retaliation claims because you have failed

1

to exhaust your administrative remedies prior to seeking relief from this Court. They also argue that you have not shown that Defendants caused you to suffer an injury that would prevent you from continuing to file lawsuits and prosecute your existing lawsuit.

After considering the arguments raised in your TRO, the Court is denying your request for injunctive relief. The Court will explain why it is doing so further below, including a discussion of the legal authority that supports this conclusion.

## II.   BACKGROUND[1]

### A.   Procedural Background

Plaintiff is a federal inmate housed at the Administrative Maximum Facility (ADX) in Florence, Colorado. *See* ECF No. 25 (Am. Compl.) at 2. In this lawsuit, Plaintiff seeks changes in his telephone privileges, visitation rights, and commissary spending under the First Step Act and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). *See* ECF No. 25. On February 5, 2024, Defendants moved to dismiss Plaintiff's claims. ECF No. 31.

Then on May 2, 2024, Plaintiff filed a Motion for Leave of Court to File a Supplemental Complaint to Add Two New Claims relating to his trust fund account. ECF No. 46. His proposed additional claims allege that Defendants are retaliating against him

---

[1] The Court notes that Plaintiff's handwriting, which is in all capitalization, is challenging to decipher. In several places, it appears his pen ran out of ink, and in other places, the ink is smudged. The Court acknowledges that Plaintiff is incarcerated and may not have access to a computer, but Plaintiff will better help his case if the Court can easily read his filings.. For future filings, the Court encourages Plaintiff to write more legibly or ask a fellow inmate to assist him. *Runnel v. Archulleta*, No. 07 CV 01196 B, 2007 WL 2221084, at *1 (D. Colo. Aug. 2, 2007) ("It is not the Court's job to undertake the laborious task of deciphering Mr. Runnel's handwriting in order to determine the claims he asserts. It is Mr. Runnel's responsibility to edit and organize his claims and supporting allegations into a manageable format and to present those claims in clear, intelligible handwriting.); D.C.COLO.LCivR 10.1(g) ("All handwritten pleadings and documents shall be legible, utilizing upper and lower case lettering.).

by (1) depriving him of more than 50% of his account deposits, and (2) "creating false debt to encumber his deposits without his signature on a BP-199 Form." ECF No. 46 at 1. Plaintiff alleges that Defendants engaged in this conduct "because Mr. Hill exercised his First Amendment right to file a lawsuit against Defendants." *Id.* The Court has referred Defendants' motion to dismiss and Plaintiff's motion for leave to amend to the Magistrate Judge, and those motions remain pending. ECF Nos. 32, 46.

On May 13, 2024, Plaintiff moved for a TRO. ECF No. 48. His TRO relates to his trust fund claims that are not yet (and may never be) part of this lawsuit. He requests that the Court issue a TRO and preliminary injunction to enjoin the BOP "from encumbering more than 50% of the deposits" made to his account under the "Inmate 50/50 Program." *Id.* at 1.

**B.   Inmate Trust Fund Accounts**

Federal inmates may hold money in a "Trust Fund" account, subject to BOP rules. *See generally* BOP Program Statement 4500.11, "Trust Fund / Deposit Fund Manual," https://www.bop.gov/policy/progstat/4500_011.pdf (last visited May 28, 2024). The BOP works with inmates to ensure that the funds inmates hold in their accounts are used to meet their financial obligations through the BOP's "Inmate Financial Responsibility Program." *See* BOP Program Statement P5380.08, "Inmate Financial Responsibility Program," available at https://www.bop.gov/policy/progstat/5380_008.pdf (last visited May 28, 2024). To prevent inmates from using all available funds in their account and thus preventing the BOP from collecting government debts or obligations, the BOP

"encumbers" inmates' funds. *See* ECF No. 54-1 (Dell Decl.), ¶ 6.[2] At ADX, "[d]ebts established on inmate accounts are encumbered on the account until the full amount of the debt is collected." *See id.*, ¶ 5 (citing ADX Institutional Supplement FLX 4500.12(1)(B), *Inmate Accounts*). Once the amount is collected and the debt is paid in full, the encumbrance is released. *Id.*

### C.    ADX Inmate 50/50 Program

The ADX has adopted an "Inmate 50/50 Program," which "establishes procedures to administer a program to assist inmates in meeting their financial responsibilities while maintaining an available balance in their Trust Fund Account." *Id.*, ¶ 6 (citing Institutional Supplement FLM 4500.11(6)(B), Inmate 50/50 Program, Section 5.A–B). To be placed in this program, an inmate must submit a request in writing to his Unit Manager, who will determine the inmate's debt owed to the government for "photo copy debts, postage debts, Disciplinary Hearing Officer (DHO) monetary restitution and/or fines, and any other miscellaneous debts." *Id*.

Once approved by the Warden, personnel in charge of the ADX's Trust Fund program will verify the inmate's debt balance, remove individual encumbrances, and establish a new, consolidated debt equal to the total amount of debt owed. *Id*. At that point, "50% of the inmate's funds are applied to the debt and the other 50% released to the inmate for his use." *Id*. Under the 50/50 Program, 50% of future incoming payments

---

[2] Defendants filed the declarations of K. Dell, C. Harvey, C. Weise, and P. Klemp as one combined file. ECF No. 54-1 at 1, 63, 66, 69 (denoting the first pages of the respective declarations).

are deducted and applied to the inmate's balance, while the other 50% is made available to the inmate for personal use. *Id*.

Critically, the 50/50 Program does not bar the separate collection of certain debts from the inmate's account. "Court ordered debts associated with the Prison Litigation Reform Act (PLRA), Inmate Financial Responsibility Program (IFRP) debts, Internal Revenue Service liens, or inmate co-pay debts are not included in the 50/50 program." Institutional Supplement FLM 4500.11(6)(B), Inmate 50/50 Program, Section 5.A.1. If, for example, an inmate files a lawsuit and is ordered by the court under the PLRA to pay the filing fee by making monthly payments in accordance with 28 U.S.C. § 1915(b), this court-ordered PLRA payment is not included in the 50/50 Program. *See id.*

The debts excluded from the 50/50 Program are withdrawn first from any incoming funds to the inmate's account. *See* Dell Decl., ¶ 7. In addition, "[i]f the participant has incurred debts (i.e. postage or photocopies) after the establishment of the 50/50 agreement, these debts will be paid as incurred out of the available balance on the inmate's account, starting with the oldest debt." *Id.*, ¶ 8 (quoting Institutional Supplement FLM 4500.11(6)(B), Inmate 50/50 Program, Section 5.B.4).

Plaintiff executed a 50/50 Agreement in July 2015. *Id.*, ¶ 12; Attachment F to Dell Decl. Plaintiff agreed that, "[f]rom this date, July 20, 2015, any new debts incurred for any reason will not be considered a part of this agreement and will need to be paid as incurred." *Id.*, ¶ 13 (quoting Plaintiff's 50/50 Agreement). Initially, the amount of Plaintiff's debt subject to his 50/50 Agreement was $2,062.91. *Id.*, ¶ 12. That amount consolidated

his then-current outstanding government debt, but it did not include any obligations he had under the PLRA or under his Inmate Financial Responsibility Plan. *Id*., ¶¶ 7, 12.

Since then, deductions and credits to Plaintiff's account have been made in accordance with his 50/50 Agreement. *Id.*, ¶ 17. As of May 17, 2024, Plaintiff's 50/50 Agreement has a remaining total balance of $1,582.91. *Id*., ¶¶ 14–16; *see also* Attachment E to Dell Decl. (Plaintiff's Inmate Trust Fund Account Debts Report). As Defendants point out, although Plaintiff's 50/50 Agreement affects the encumbrances and limitations on Plaintiff's account, his 50/50 Agreement does not cover all of his debts. Dell Decl., ¶ 17. For example, since entering into his 50/50 Agreement on July 20, 2015, Plaintiff has accumulated additional debt of $1,355.19. *Id*., ¶ 16. Because those debts postdate his 50/50 Agreement, they are not considered part of the agreement and must be paid as they are incurred. *Id*., ¶ 13. Therefore, funds that Plaintiff receives are first used to pay his PLRA debts and debts he incurred after entering into his 50/50 Agreement before they are applied to his 50/50 Agreement. *See id.*

To sum up, although Plaintiff may seek to consolidate his debts under a new 50/50 Agreement, *id.*, ¶ 18, Plaintiff does not have a right to use 50% of all funds he receives under his current agreement because the agreement does not apply to new debt.

### D.   Plaintiff's Retaliation Allegations

Plaintiff claims that his funds were encumbered to retaliate against him for filing grievances and lawsuits. ECF No. 48 at 5–7. Specifically, Plaintiff alleges that a total of $1,112.95 was deposited to his account between January 1, 2024, and April 1, 2024. *Id.*

at 6. He alleges that he "has not received 50% of those deposits despite being on the 50/50 program." *Id*.

Plaintiff then alleges that Defendants "directed, or asked Trust Fund Director K. Dell[,] to deprive Mr. Hill of 50% of the deposits made to his account," and "K. Dell set Mr. Hill account to encumber 100% of the deposits for Mr. Hill filing this lawsuit against the Defendants." *Id*. at 6–7. When he complained of the encumbrances, according to Mr. Hill, "Defendants sent a message through Unit Manager Harvey and Counselor Wiese that Mr. Hill['s] money [was] being taken because Mr. Hill filed a lawsuit against the Defendants." *Id*. at 7.

Trust Fund Supervisor Dell explained in her declaration that no BOP personnel instructed her "to change anything about how [the] complex encumbrance system applies to Plaintiff based on his filing of a lawsuit against Defendants." Dell Decl., ¶ 20. Similarly, Unit Manager Harvey and Counselor Wiese stated that they did not tell Mr. Hill that his money was being taken because he had filed a lawsuit against Defendants. ECF No. 54-1 (Harvey Dec.), ¶ 4; ECF No. 54-1 (Weise Decl.), ¶ 4.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a district court to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to a district court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933); *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d ed. 2023) ("The issuance of a temporary restraining order is a matter that lies within the discretion of the

district court."). The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). "[A]ll four of the equitable factors [must] weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

In addition to the four factors, a district court must also consider whether the movant's request falls within one of the "disfavored injunction" categories. The categories of disfavored injunctions include those that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford all the relief that the movant could expect to win at trial. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2004). A request for disfavored injunctive relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal

8

course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Where a movant requests a disfavored injunction, the movant "must make a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Colo. v. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (quotation omitted).

## IV.   ANALYSIS

The Court has reviewed Plaintiff's motion and amended complaint, Defendants' opposition, and the various exhibits attached to the opposition. ECF Nos. 25, 48, 54. For the reasons below, the Court finds that Plaintiff has failed to meet his burden of showing that a TRO is warranted.

### A.  Likelihood of Success on the Merits

Before a district court may issue a preliminary injunction, a plaintiff must establish a substantial likelihood of prevailing on the merits of his claims. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). However, "the determination of a motion for a preliminary injunction and a decision on the merits are different." *Valdez v. Applegate*, 616 F.2d 570, 572 (10th Cir. 1980). A plaintiff generally need only "establish a reasonable probability of success, not an overwhelming likelihood of success.'" *Atchison, T. & S. F. Ry. Co. v. Lennen*, 640 F.2d 255, 261 (10th Cir. 1981) (citation and quotations omitted). But where, as here, a plaintiff attempts to alter the status quo, a plaintiff must make a "strong showing" with respect to the likelihood of success on the merits. *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

Plaintiff seeks an order enjoining Defendants "from encumbering more than 50% of the deposits" in his inmate trust fund account. In other words, Plaintiff asks the Court

to alter the terms of his 50/50 Agreement. The Court thus finds that Plaintiff's requested injunctive relief "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *See Schrier,* 427 F.3d at 1259, 1261.

In terms of Plaintiff's likelihood of prevailing on the merits of his claims, Defendants argue that these proposed claims are subject to dismissal because he failed to exhaust his Administrative Remedies prior to filing this suit. ECF No. 54 at 10 (citing Klemp Decl., ¶ 15 (explaining that Plaintiff has not exhausted)). The evidence submitted by Defendants shows that, although Plaintiff began the exhaustion process, he did not complete the process prior to filing this lawsuit. *Id.* at 11 (citing Klemp Decl., ¶¶ 12–15). "Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012).

In addition to Plaintiff's failure-to-exhaust hurdle, Plaintiff has not established a reasonable probability of success on his retaliation claims.

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). Defendants argue that Plaintiff has not established the second and third prongs. ECF No. 54 at 12. The Court agrees.

Based on the declarations and documents before the Court, it appears Defendants are complying with the BOP Inmate 50/50 Program and the terms of Plaintiff's 50/50 Agreement. Although Plaintiff alleges that he "has not received 50% of those deposits despite being on the 50/50 program," ECF No. 48 at 6, he appears to improperly assume that 50% of all incoming funds should be available for his use. As explained above, that is not the case. And in terms of Defendants' improper motivation, Plaintiff alleges that "Defendants sent a message through Unit Manager Harvey and Counselor Wiese that Mr. Hill['s] money [was] being taken because Mr. Hill filed a lawsuit against the Defendants." *Id.* at 7. But he points to no other evidence to support this allegation, and Mr. Harvey and Mr. Wiese deny sending this message or making related statements. Harvey Decl., ¶ 4 ("I deny making this or any similar statement. A review of [Plaintiff's] trust fund account demonstrates his deposits are being applied toward payment of his 50/50 Program agreement and debts he incurred after entering into that agreement."); Weise Decl., ¶ 4 (same).

Based on the record before the Court, Plaintiff has not established a reasonable probability of success—let alone a "strong showing"—on the merits of his proposed retaliation claims. This factor weighs against injunctive relief.

### B. Irreparable Harm

Irreparable harm means that the claimed injury "must be both certain and great"; it is not enough to be "merely serious or substantial." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250 (citation omitted). Generally, a harm is not irreparable when the losses may be compensated by monetary damages. *See Heideman v. S. Salt Lake City*, 348

F.3d 1182, 1189 (10th Cir. 2003). The movant must show that the "injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citation omitted); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (showing irreparable harm is "not an easy burden to fulfill").

Plaintiff argues, without more, that he will suffer irreparable injury as a result of Defendants "impinging his First Amendment Rights[.]" ECF No. 48 at 7. To be sure, "there is a presumption of irreparable harm for the loss of First Amendment freedom." *Celebrity Attractions, Inc. v. Oklahoma City Pub. Prop. Auth.*, 660 F. App'x 600, 603 (10th Cir. 2016). But Plaintiff must do more than make a conclusory statement of the harm he faces. He does not allege that he cannot file additional lawsuits or prosecute his various lawsuits, including this action. Indeed, he has filed several documents in this lawsuit since filing his TRO, including two notices of intent to file motions for sanctions. *See* ECF No. 51 (dated by Plaintiff May 11, 2024, 11 days after dating his TRO); ECF No. 52 (dated by Plaintiff May 13, 2024). Moreover, it is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm [because] such losses are compensable by monetary damages." *Schrier*, 427 F.3d at 1267 (citation omitted) (plaintiff terminated as chair of medical department had not shown that pending a judgment he could suffer "actual or significant risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages").

The Court finds this factor neutral. On the one hand, Plaintiff has broadly alleged (albeit in conclusory fashion) a loss of a First Amendment right. On the other, his

allegations are conclusory and generally boil down to monetary damages, which can be compensated.

### C.  Balance of Hardships

"To be entitled to a preliminary injunction, the movant has the burden of showing that 'the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction.'" *Barrington v. United Airlines, Inc*., 566 F. Supp. 3d 1102, 1113 (D. Colo. 2021) (quoting *Heideman*, 348 F.3d at 1190). In a single sentence, Plaintiff merely states that the "threatened injury to Mr. Hill's constitutionally protected right to file a grievance or lawsuit outweighs" any harm to Defendants. ECF No. 48 at 8. Plaintiff, however, has not established that he cannot file grievances or lawsuits or otherwise prosecute his current actions. And the BOP has a strong interest in ensuring the ordinary operation of its policies, including the fair and consistent administration of the 50/50 Program. *See Pinson v. Pacheco*, 424 F. App'x 749, 756 (10th Cir. 2011).

The Court finds that the balance of equities does not favor the issuance of an injunction.

### D.  Public Interest

Like the other three factors, Plaintiff bears the burden of showing that the public interest is not adverse to his requested injunctive relief. *Pinson*, 424 F. App'x at 755–56. Here, Plaintiff seeks a court order enjoining Defendants from encumbering any more than 50% of the deposits in his inmate trust fund account. Defendants argue that the injunction would conflict with and undermine the operation of the prison system and the Inmate

50/50 Program, which seeks to strike a careful balance between ensuring that inmates pay their debts while preserving some access to inmate funds. ECF No. 54 at 15.

The Court finds that Plaintiff has failed to make his required showing. The Tenth Circuit has held that "there is a strong public interest in affording substantial deference to prison officials in managing the daily operations of a prison due to the unique nature, needs and concerns of the prison environment." *Pinson*, 424 F. App'x at 756. By asking this Court to alter Plaintiff's 50/50 Agreement and the Inmate 50/50 Program, Plaintiff asks this Court to interfere with BOP officials' discretion and autonomy. The Court declines to do so at this stage. *See Hinkle v. Beckham Cnty. Bd. of* Cnty. Comm'rs, 962 F.3d 1204, 1232 (10th Cir. 2020) ("[B]ecause prison officials have certain expertise that judges lack, the [Supreme] Court stressed that the judiciary must give prison officials considerable discretion before disturbing their policies."); *Campbell v. Milyard*, No. 09-CV-01041-CMA-KLM, 2010 WL 5110095, at *8 (D. Colo. Oct. 15, 2010) ("[T]he Court's interference with Defendants' day-to-day decisions regarding how to manage this Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from how Defendants manage all other inmates, would significantly undermine their discretion and autonomy."), *report and recommendation adopted*, No. 09-CV-01041-CMA-KLM, 2010 WL 5102993 (D. Colo. Dec. 8, 2010).

Accordingly, the public interest does not favor injunctive relief.

* * *

Because the Court has found that Plaintiff failed to prove at least three of the TRO factors, Plaintiff's request for injunctive relief is not warranted. *Vill. of Logan*, 577 F. App'x at 766.

## V. CONCLUSION

Consistent with the above analysis, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 48, is DENIED.

DATED this 29th day of May 2024.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge